UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x_____

BENJAMIN RODRIGUEZ

                              Plaintiff,                    1:25-CV-08362

              -against-
                                                           **COMPLAINT**
                                                           **Jury Trial Demanded**
605 WEST 42ND OWNER, LLC,
COLUMBUS PROPERTY MANAGEMENT, LLC, and
KELSEY GARCIA,
                              Defendants,
x_____

        Plaintiff, by and through his attorneys, Lincoln Square Legal Services, Inc., upon personal

knowledge as to himself and upon information and belief as to all other matters, alleges as follows:

                         <u>PRELIMINARY STATEMENT</u>

1.  This is a complaint brought to remedy discrimination on the basis of race, national origin,

    sex, and handicap, and in violation of the Fair Housing Act ("FHA"), as amended, 42 U.S.C.

    § 3601 et seq.; New York State Executive Law 296 § 5(a); New York City Code § 8-

    107(5)(a)(1)(a)–(c) and source of income under New York State Executive Law 296 § 5(a);

    New York City Code § 8-107(5)(a)(1)(a)–(c). This complaint is also brought to remedy

    discrimination based on Plaintiff's domestic violence victim status, in violation of New

    York Real Property Law § 227-d(2)(a) and New York City Code § 8-107.1(2)(a)(1). This

    complaint is also brought to remedy the harm caused by harassment by a landlord in

    violation of New York City Code § 27-2004, retaliation by a landlord in violation of New

    York State Real Property Law § 223-b, and illegal eviction in violation of New York City

    Administrative Code § 26-521.

1

2. Beginning in July 2021, employees of Defendant Columbus Property Management ("Defendant Management") began to intentionally discriminate against Plaintiff on the basis of his race, sexual orientation, disability, and source of income.

3. Defendant Management's pattern of intentional discrimination against Plaintiff included their employees' use of racial and homophobic slurs including the term "nigger" and "faggot," selective application of building policies, and encouragement of Defendant Kelsey Garcia ("Defendant Garcia") to manufacture false allegations against Plaintiff to serve as pretext for Defendant 605 West 42nd Owner, LLC ("Defendant Owner") to evict him.

4. Furthermore, Defendant Management breached its duty of care by permitting his former partner and domestic abuser entry to the apartment building.

5. Defendant Owner also unlawfully evicted Plaintiff from his apartment, causing him significant harm. Despite his status as a lawful occupant, Defendant Owner improperly used the courts to evict Plaintiff in violation of a Housing Court stipulation. It was only after the New York State Supreme Court's issued a decision restoring possession was Plaintiff able to return to the apartment safely.

6. Defendant Garcia aided Defendant Management in its discriminatory conduct. Defendant Garcia manufactured the false claim that Plaintiff damaged an electronic doorbell on the front door of her apartment. In so doing, she created the opportunity for Defendant Owner to support its false nuisance allegations against Plaintiff. Defendant Garcia also facilitated Defendant Management's discriminatory conduct through her role as a NYPD officer and by encouraging them to involve the police and the criminal legal system in rather routine landlord tenant matters.

7. Altogether, the Defendants' discriminatory practices, policies, and conduct have resulted in substantial injury to Plaintiff.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as Plaintiff asserts federal claims under the FHA; under 42 U.S.C. § 3613(a)(1)(A) as Plaintiff seeks appropriate relief regarding a discriminatory housing practice under the FHA.

9. The Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to their federal claims in this action that they form part of the same case or controversy.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York County. This is also where all four defendants reside or have their primary place of business

## THE PARTIES AND THE SUBJECT PROPERTY

11. Plaintiff Benjamin Rodriguez ("Plaintiff") is an adult, gay, Latino male living at 605 West 42nd Street, Apt. 18-M, New York, New York 10036 ("Subject Property"). He has a positive HIV diagnosis and receives a rental subsidy in the form of a voucher issued by the city-run HIV/AIDS Services Administration ("HASA").

12. Plaintiff's HIV diagnosis substantially limits one or more of his major life activities, including but not limited to, his ability to take care of himself and interact with others. He also has a record of having such impairments, as defined by the FHA, 42 U.S.C. 3602(h)(1)–(2). He is therefore disabled within the meaning of the FHA.

13. Defendant 605 West 42nd Owner, LLC is the owner of the Subject Property. Its principal office is located at 3 Columbus Circle #2600, New York, New York 10019.

14. The Subject Property is a dwelling as defined under the FHA, 42 U.S.C. 3602(b), and is a housing accommodation as defined by the New York State Human Rights Law § 292(10) and New York City Human Rights Law, N.Y.C. Admin. Code § 8-102.

15. Defendant Columbus Property Management is the management agent of the Subject Property. Upon information and belief, Defendant Management's duties include but are not limited to receiving applications for tenancy; interacting with tenants on rental-related issues; handling tenant complaints and needs; holding keys to access tenants' units; performing maintenance at the property, including repairs and other needs in tenants' units; and enforcing lease provisions.

16. Defendant Garcia was a tenant of Apartment 26-Q of Subject Property at all relevant times described herein, and upon belief is still a tenant at the Subject Property. At the time of the conduct alleged in this complaint, Defendant Garcia was employed as a police officer by the NYPD. Defendant Garcia engaged in a pattern of discriminatory and harassing conduct towards Plaintiff in her capacity as a private citizen.

## FACTUAL ALLEGATIONS

**Defendant Owner & Defendant Management Have Utilized Its Employees as Instruments to Perpetuate a Scheme of Harassment**

17. On or about February 2021, Plaintiff moved in with his close friend, Hector Peña, who is the tenant of record of Apartment 18-M of the Subject Property. Plaintiff is listed as an occupant on the lease.

18. In or about August 2021, an employee of Defendant Management, identified as "Sarah," called Plaintiff a "faggot." Plaintiff was distraught and initiated a complaint with the U.S. Department of Housing and Urban Development ("HUD").

19. In or about October 2021, Plaintiff informed Defendant Management of an Order of Protection filed against his former partner, Gjon Rxhea. Despite this information being known to Defendant Management employees, including the 24-hour front door concierge, they repeatedly failed to prevent, or intentionally permitted, Rxhea's entry into the building and onto the floor where Plaintiff's apartment is located.

20. On December 20, 2021, Plaintiff was awarded $24,000 in connection with the Emergency Rental Assistance Program ("ERAP") from the New York State Office of Temporary and Disability Assistance ("OTDA").[1]

21. On January 26, 2022, HUD referred Plaintiff's case to the New York State Division of Human Rights ("NYS DHR").[2]

22. In or about June 2021 and January 2022, Plaintiff received a notice from Defendant Management, requesting that he remove a wireless doorbell from his front door.

23. Plaintiff found it unusual that Defendant Management would require the removal of an electronic doorbell, and he suspected that Defendant Management was selectively applying this policy to him for discriminatory reasons. Consequently, on February 11, 2022, Plaintiff visited various floors of the Subject Property and observed that other units had wireless doorbells. To establish a record of this differential treatment, Plaintiff captured timestamped pictures on his mobile telephone.

---

[1] See NY Office of Temporary & Disability Assistance, Emergency Rental Assistance Program (ERAP) (last visited Oct. 6, 2025), https://otda.ny.gov/programs/emergency-rental-assistance/ ("The New York State Emergency Rental Assistance Program (ERAP) will provide significant economic relief to help low and moderate-income households at risk of experiencing homelessness or housing instability by providing rental arrears, temporary rental assistance and utility arrears assistance.").

[2] On September 13, 2022, the NYS DHR dismissed Plaintiff's case for a lack of probable cause because according to it other "male employees, regardless of sexual orientation, call[ed] each other 'fag'."

24. In or about March 2022, Defendant Management issued a letter to Plaintiff informing him that he could not have signs on his door. Defendant Management then removed a pro-LGBT rainbow sign from Plaintiff's front door without his permission.

25. On March 11, 2022, Plaintiff was again concerned that he was being treated differently and decided to see whether other residents were subjected to this signage policy. Plaintiff again observed that other tenants of the Subject Property had religious and secular signs on their doors while denying Plaintiff the opportunity to have comparable pro-LGBT signs affixed to his door.

26. In or about March 2022, Plaintiff discovered racist graffiti written in permanent marker on the wall next to his front door and on the staircase wall leading to his apartment. The graffiti next to his front door included the phrase "nigger faggot," while the graffiti on the staircase read "Fuck Ben." Plaintiff was forced to see this offensive material daily for one month because Defendant Management failed to paint over it, despite Plaintiff informing Defendant Management on multiple occasions and submitting multiple work orders. Consequently, Defendant Management's inaction worsened Plaintiff's emotional state.

27. In or around May 2022, the front door concierge employed by Defendant Management rejected Plaintiff's guests. Additionally, employees of Defendant Management often warned Plaintiff's guests to be "cautious" of him, falsely stating that he had just been "released from jail." This misinformation was intended to instill fear in his guests.

28. On July 14, 2022, Defendant Management wrongfully refused Plaintiff's ERAP payment and permitted rent arrears to accumulate.

29. On November 30, 2024, Plaintiff attempted to speak with the front desk concierge to advocate for his neighbors, a gay couple, who were facing similar unlawful behavior from

Defendant Management's employees. While Plaintiff was conversing with Defendant Management's employees, another tenant who, upon information and belief, is Defendant Garcia's husband, passed by the front desk and became aggressive towards Plaintiff and his neighbors. As he left, Defendant Garcia's husband referred to Plaintiff as a "pussy" and, upon noticing that one of the neighbors was recording, called him a "faggot." Employees of Defendant Management witnessed the incident but did nothing to address the discriminatory behavior of Defendant Garcia's husband.

30. On or around December 10, 2024, Plaintiff attempted to register his emotional support animal with Defendant Management. However, when he attempted to register his dog, Plaintiff was denied the necessary paperwork to comply with the policies established by Defendant Management.

31. On December 10, 2024, Defendant Owner sent Hector Peña and Plaintiff a "Ten (10) Day Notice to Cure Default." Instead of providing Plaintiff with the required paperwork, Defendant Owner chose to pursue legal action and labeled his emotional support animal as a nuisance. Defendant Owner claimed that the dog breed was "dangerous" and that the animal made Defendant Management's employees and other tenants feel "nervous."

32. On or around December 10, 2024, Plaintiff attempted to determine whether a newly purchased bed could be delivered to the Subject Premises and fit through the back door. After stepping outside momentarily, a security guard employed by Defendant Management wrongfully refused him re-entry. The security guard held the door shut and instructed him to go through the front entrance. Plaintiff, who was in shorts at the time, expressed to the guard that it was too cold outside to go around to the front and that as a resident of the

building, he had the right to enter.[3] Despite the guard's refusal to allow him re-entry, Plaintiff managed to gain access by pulling the door open and sliding past the guard.

33. On or around February 13, 2025, Plaintiff visited a friend living at 555 West 42nd Street, New York, NY 10036 ("Oskar Luxury Apartments"). Oskar Luxury Apartments is managed by Defendant Management. During his visit, the front door concierge informed Plaintiff that he could not enter the building because Defendant Management indicated that he was banned from the premises.

## Defendant Owner & Defendant Management Colluded with Defendant Garcia to Advance Their Discriminatory Agenda

34. On April 6, 2022, Plaintiff was called to the Tenth Precinct[4] of the New York Police Department ("NYPD"). Upon arrival, he was arrested based on a false allegation that he had damaged Defendant Garcia's electronic doorbell on February 11, 2022, while investigating if other tenants had been required to remove their electronic doorbells. At the time of the arrest, Plaintiff had never met Defendant Garcia and had no reason to destroy her camera. Upon information and belief, Defendant Garcia filed an Order of Protection against Plaintiff following the alleged February 11 incident.

35. On May 24, 2022, Plaintiff was issued a violation of the Order of Protection. Defendant Garcia alleged that Plaintiff was filming her and hit her door with his fist. However, Plaintiff was outside of the building with his cousin during this time, as is corroborated by Citi Bike receipts.

---

[3] On the evening of December 10, 2025, the temperature in Manhattan was 44 degrees. *The Weather Channel*, Monthly Weather Forecast for Manhattan, NY, (last visited Apr. 2, 2025), https://weather.com/weather/monthly/l/a1e457ec36ecb314ca4eb582a1a1317ca70c303e26ecaa7123663d69f32f6ffb).
[4] The Tenth Precinct is located at 230 West 230 Street, New York, NY 10011.

36. On or around December 2022, Plaintiff contacted the Internal Affairs Division of the NYPD. Plaintiff informed Internal Affairs that he had never met Defendant Garcia and had not damaged her camera. Additionally, Plaintiff informed the NYPD that he suspected Defendant Management was encouraging Defendant Garcia to manufacture nuisance claims to ultimately have him removed from the Subject Property. Internal Affairs responded that Defendant Management informed Defendant Garcia that Plaintiff had destroyed her electronic doorbell. Defendant Management fabricated this information. One of the officers from the Internal Affairs Unit stated that Defendant Management had encouraged Defendant Garcia to file a complaint because "they were trying to remove [him]."

**Defendant Owner & Defendant Management Abused Judicial Processes & Weaponized Law Enforcement to Advance Their Discriminatory Agenda**

37. On December 15, 2021, Defendant Owner sent a 10-day Notice to Cure to Peña and Plaintiff, alleging nuisance behavior in violation of the lease.

38. On February 16, 2022, Defendant Owner filed a nuisance holdover against Plaintiff in Housing Part. *605 West 42nd Owner LLC v. Hector Peña*, Index No. LT-302061-22/NY [HO], NYSCEF Doc. 1 [hereinafter, "Nuisance Holdover"].

39. On February 25, 2022, Defendant Owner filed a case seeking an ejectment action in the Supreme Court of New York. *605 West 42nd Owner LLC v. Hector Peña*, Index No. 151686/2022, NYSCEF Doc. 1.

40. On October 28, 2022, Plaintiff and Defendant Owner reached a settlement through stipulation in the Housing Court. *605 West 42nd Owner LLC v. Hector Peña*, Index No. LT-302061-22/NY, NYSCEF Doc. No. 31. During this probationary period, "without

making any admissions, Plaintiff agreed to refrain from" engaging in disruptive conduct. *Id.* at ¶ 7. Defendant Owner agreed "not to harass [Plaintiff]" and to "not allow admission of any guests to [Plaintiff's] apartment without explicit permission." *Id.* at ¶ 8. Defendant Owner also agreed to adjourn the New York State Supreme Court case while the probationary period was in effect. *Id.* at ¶ 21.

41. On March 6, 2023, Defendant Owner commenced a second holdover petition in Housing Part D, alleging that Plaintiff had overstayed his lease and did not have permission to remain in the unit. *605 West 42nd Owner, LLC v. Hector Peña*, Index No. LT-304475-23/NY (HO), NYSCEF Doc. 1. However, Defendant Owner's assertion that Plaintiff overstayed his lease was inaccurate given that the two-attorney stipulation was in effect and granted him permission to remain in the unit until October 28, 2023. *605 West 42nd Owner LLC v. Hector Peña*, Index No. LT-302061-22/NY [HO], NYSCEF Doc. 17.

42. On April 28, 2023, Defendant Owner moved to restore the Nuisance Holdover in Housing Court, which the terms of the stipulation allowed only if one of the parties believed there had been a material breach. The Housing Court found no evidence of breach. *605 West 42nd Owner, LLC v. Hector Peña*, Index No. LT-302061-22/NY, NYSCEF Doc. 32.

43. On June 8, 2023, Defendant Owner appeared at a discovery status conference in the matter before the New York State Supreme Court. *605 West 42nd Owner, LLC v. Hector Peña*, Index No. 151686/2022, NYSCEF Doc. No. 75. Because Plaintiff was representing himself *pro se* at the time, he was "under the impression that the present case would be adjourned under the settlement stipulation and any proceeding would have to take place in Housing Court where he would be represented by [his] counsel." *Id.* at 4–5. Consequently, Plaintiff did not appear at a status conference, and a default judgment was issued against him. *Id.* at

3. Defendant's actions here were in direct violation of the terms of the two-attorney stipulation. *See* Index No. LT-302061-22/NY, NYSCEF Doc. 17 ¶ 21.

44. In or around June to July 2023, Plaintiff was spending time with his friend and an acquaintance in his apartment. They heard loud bangs, and Plaintiff looked through the front door's peephole and saw members of what he later learned were members of the NYPD Special Operations Unit. Plaintiff was afraid to open the door and called 911. NYPD proceeded to shoot a projectile into the peephole. One or more NYPD officers broke down Plaintiff's front door. NYPD's officers tased and threw Plaintiff out of the apartment without any clothing, and he was subsequently transported to the hospital. Plaintiff was informed that the NYPD was responding to a call from Defendant Management alleging that "he was suicidal."

45. Subsequently, Defendant Owner unlawfully evicted Plaintiff by changing the locks and removing Plaintiff's personal property from his apartment unit. For the next five months, Plaintiff experienced homelessness and several shelter stays. Plaintiff's physician noted that he experienced "several symptoms of increased stress, anxiety, poor sleep, fatigue, and poor focus as a result of his housing instability." Furthermore, Plaintiff's physician noted, "[t]hese symptoms further increase his risk of adverse health outcomes and decreased continuity of health services that are required for the appropriate monitoring and management of his chronic HIV infection."

46. On January 12, 2024, Plaintiff was restored to his apartment by the New York State Supreme Court. The Court held that Defendant Owner "was not permitted to seek the same relief from this court while the motion was still pending . . . [Moreover], the Probationary Period was still in effect during the time [Defendant Owner] appeared at the Status

11

Conference and was still in effect when this court granted default judgment in favor of [Defendant Owner]. Defendant Owner never sought to adjourn the instant case and never informed the court of the stipulation agreement." *605 West 42nd Owner, LLC v. Hector Peña*, Index No. 151686/2022, NYSCEF Doc. No. 75 at 4. The court sanctioned Defendant Owner for seeking a default judgment despite the housing court settlement. *Id*. at 6.

47. Upon restoration to his apartment, Plaintiff noticed that many of his belongings were destroyed, his father's ashes were removed from its urn, and there was damage to the apartment.

48. The above facts establish that Defendant Owner and Defendant Management have intentionally discriminated against Plaintiff, and they have retaliated against him for filing good faith complaints. The actions of Defendant Owner and Defendant Management have resulted in physical, emotional, and monetary injuries.

49. Furthermore, upon information and belief, Defendant Owner encouraged, colluded with, and/or allowed Defendant Garcia to manufacture false nuisance claims against Plaintiff to facilitate Defendants' goal of unlawfully removing Plaintiff from the Subject Property. Consequently, Defendant Garcia has played a pivotal role in discriminating against Plaintiff and has served as an agent of Defendant Owner.

## CAUSES OF ACTION

### First Cause of Action

**(Violations of Fair Housing Act, 42 U.S.C. § 3601 et seq.)**

50. Plaintiff repeats and reincorporates by reference all allegations set forth in paragraphs 1–49.

51. Defendant Owner and Defendant Management made unavailable or denied a dwelling to the Plaintiff because of his race, sexual orientation, and disability status in violation of 42 U.S.C. § 3604(a) and 42 U.S.C. § 3604(f)(1) when they illegally evicted him and harassed him in order to induce him into leaving his lease.

52. Defendant Owner and Defendant Management made unavailable or denied a dwelling to the Plaintiff because of his race, sexual orientation, and disability status in violation of 42 U.S.C. § 3604(a) when they refused to accept Plaintiff's ERAP funds and allowed arrears to accumulate.

53. Defendant Owner and Defendant Management discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith because of his race, sexual orientation, and disability status in violation of 42 U.S.C. § 3604(b) and 42 U.S.C. § 3604(f)(2) when they engaged in a pattern of harassing and discriminatory conduct against him and denied him the privileges of his occupancy, including peaceful occupancy, as well as when they omitted to act to protect the Plaintiff from his abusive ex-partner.

54. Defendant Owner and Defendant Management discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith because of his disability status in violation of 42 U.S.C. § 3604(f)(3)(B) when they denied the necessary paperwork to comply with Defendant Management's policies for registering an emotional support animal and instead labeled the animal as a nuisance, thereby refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford Plaintiff equal opportunity to use and enjoy the dwelling.

55. Defendant Owner and Defendant Management violated 42 U.S.C § 3604(c) when Defendant Management's employees used the word "faggot" against the Plaintiff and failed to timely remove racist and homophobic graffiti from the wall adjacent to his apartment door.

56. Upon information and belief, Defendant Owner and Defendant Management separately and independently coerced, intimidated, and interfered with the Plaintiff in the exercise and enjoyment of the rights granted and protected by 42 U.S.C. § 3604, in violation of 42 U.S.C. § 3617 when the Plaintiff exercised his rights as an occupant of the unit and the Defendants engaged in their pattern of harassment and discrimination based on his race, sexual orientation, and disability status.

57. The Defendants' repeated acts of harassment inflicted harm by intent on the Plaintiff, and were done on the basis or because of his race, sexual orientation, and disability status.

58. Plaintiff is an aggrieved person as defined in 42 U.S.C. §§ 3602(d) and (j). He has been injured by Defendants' discriminatory conduct and has suffered damages as a result.

### Second Cause of Action

**(Violation of New York Executive Law, § 296 et seq.)**

59. Plaintiff repeats and reincorporates by reference all allegations set forth in paragraphs 1–49.

60. By the actions and statements described above, Defendant Owner and Defendant Management have discriminated in the terms, conditions, or privileges of a rental residential unit on the basis of the race, sexual orientation, disability status, lawful source of income, and domestic violence victim status of Plaintiff, in violation of N.Y. Exec. Law § 296(5)(a)(2) (Consol. 2024).

**Third Cause of Action**

**(Violation of New York Real Property Law, § 227-d et seq.)**

61. Plaintiff repeats and reincorporates by reference all allegations set forth in paragraphs 1–49.

62. By the actions, omissions to act, and statements described above, Defendant Owner and Defendant Management have discriminated in the terms, conditions, or privileges of a rental residential unit on the basis of Plaintiff's domestic violence victim status, in violation of N.Y. Real Prop. Law § 227-d(2)(a).

63. Plaintiff is an aggrieved person under N.Y. REAL PROP. LAW § 227-d(2). He has been injured by Defendant Owner and Defendant Management's discriminatory conduct and has suffered damages as a result.

**Fourth Cause of Action**

**(Violation of New York City Municipal Law, 8-107(5)(1)(b))**

64. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

65. By the actions, omissions to act, and statements described above, Defendant Owner and Defendant Management have discriminated in the terms, conditions, or privileges of a rental residential unit on the basis of the race, sexual orientation, disability status, lawful source of income, and domestic violence victim status of the Plaintiff, in violation of New York City Municipal Law 8-107(5)(1)(b).

66. Plaintiff is an aggrieved person under New York City Municipal Law 8-107(5)(1)(b). He has been injured by Defendant Owner and Defendant Management's discriminatory conduct and has suffered damages as a result.

**Fifth Cause of Action**

**(Violation of New York City Municipal Law, 8-107.1(2)(a)(1))**

67. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

68. By the actions, omissions to act, and statements described above, Defendant Owner and Defendant Management have discriminated in the terms, conditions, or privileges of a housing accommodation on the basis of Plaintiff's domestic violence victim status, in violation of New York City Municipal Law § 8-107.1(2)(a)(1).

69. Plaintiff is an aggrieved person under New York City Municipal Law 8-107.1(2)(a)(1). He has been injured by Defendant Owner and Defendant Management's discriminatory conduct and has suffered damages as a result.

**Sixth Cause of Action**

**(Breach of Landlord's Duty of Care)**

70. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

71. Defendant Owner, as a landlord, has a duty of care to its tenants and a duty to control the conduct of third persons on their premises when they have the opportunity to control such persons and are reasonably aware of the need for such control. This duty includes taking minimal precautions to protect tenants from foreseeable harm, including a third party's foreseeable criminal conduct.

72. Plaintiff informed Defendant Owner and Defendant Management of an Order of Protection against Rxhea and requested that Rxhea be denied entry. Despite this notice, Defendant

Owner and Defendant Management repeatedly allowed Rxhea entry into the building and onto the floor of the Plaintiff's apartment.

73. By repeatedly allowing his ex-partner, Gjon Rxhea, into the building and on to the floor of the Plaintiff's apartment, Defendant Owner and Defendant Management caused significant emotional and physical harm to the Plaintiff.

74. Defendant Owner and Defendant Management had reasonable opportunity to control the entry of Gjon Rxhea and the harm he caused to the Plaintiff was foreseeable. Therefore, they breached their duty of care to the Plaintiff.

### Seventh Cause of Action

### (Violation of New York City Administrative Code § 26-521 et seq.)

75. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

76. By the actions and statements described above, Defendant Owner has:

   a. Used or threatened the use of force to induce the Plaintiff, who is a lawful occupant of Apartment 18-M in the Subject Property, to vacate the dwelling unit, in violation of N.Y.C. Admin. Code § 26-521(1) (2024).

   b. Engaged in a course of conduct which interferes with or is intended to interfere with or disturb the comfort, repose, peace or quiet of Plaintiff in the occupancy of the dwelling unit, to induce Plaintiff to vacate the dwelling, in violation of N.Y.C. Admin. Code § 26-521(2) (2024).

   c. Engaged in or threatened to engage in other conduct which is intended to prevent Plaintiff from lawfully occupying the dwelling unit or to induce the occupant to vacate the dwelling unit, including but not limited to removing Plaintiff's

possessions from the dwelling unit, and changing the lock on entrance door without supplying the occupant with a key, in violation of N.Y.C. Admin. Code § 26-521(3) (2024).

77. By the actions and statements described above, Defendant Garcia has:

    a.  Used or threatened the use of force to induce the Plaintiff, a lawful occupant of Apartment 18-M in the Subject Property, to vacate the dwelling unit, in violation of N.Y.C. Admin. Code § 26-521(1) (2024).

    b.  Engaged in a course of conduct which interferes with or is intended to interfere with or disturb the comfort, repose, peace or quiet of Plaintiff in the occupancy of the dwelling unit, to induce Plaintiff to vacate the dwelling, in violation of N.Y.C. Admin. Code § 26-521(2) (2024).

    c.  Engaged in or threatened to engage in other conduct intended to prevent Plaintiff from lawfully occupying the dwelling unit or to induce the occupant to vacate the dwelling unit, in violation of N.Y.C. Admin. Code § 26-521(3) (2024).

78. Defendants Owner and Defendant Garcia's conduct was intentional and resulted in emotional and financial injury to Plaintiff.

### Eighth Cause of Action

**(Violation of New York Real Property Law, N.Y. Real Prop. Law § 223-b)**

79. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

80. By the actions and statements described above, Defendant Owner has:

    a.  Served notice to quit upon Plaintiff and commenced actions to recover possession of real property in violation of New York Real Prop. §223-b(1)(a) in retaliation for

Plaintiff's good faith complaints, including but not limited to Plaintiff's HUD complaints submitted on or about October 2021 and August 2021 for landlord's violations of health and safety law regulations, warranty of habitability, and duty to repair.

b. Served notice to quit upon Plaintiff and commenced actions to recover possession of real property in violation of New York Real Prop. §223-b(1)(b) in retaliation for Plaintiff's actions taken in good faith to secure or enforce rights under the lease, and warranty of habitability.

## Ninth Cause of Action

### (Violation of New York City Administrative Code § 27-2005 et seq.)

81. Plaintiff repeats and reincorporates by reference all allegations set forth in the paragraphs above.

82. Defendant Owner and Defendant Management are owners under N.Y.C. Admin Code § 27-2004(a)(45).

83. Defendant Owner and Defendant Management have engaged in a sustained pattern of harassment with the intent of causing Plaintiff to vacate the premises, in violation of N.Y.C. Admin Code § 27-2005(d) and 27-2004(a)(48). The following actions illustrate Defendant Owner's and Defendant Management's harassment of Plaintiff:

a. Creating an Unsafe Residential Environment: Defendant Management allowed Plaintiff's former partner and domestic abuser to gain access to the building and his floor, contributing to a hostile and dangerous residential environment.

19

     b. <u>Unnecessary Surveillance:</u> Employees of Defendant Management engaged in unwarranted surveillance by following Plaintiff up to his apartment and other building floors.

     c. <u>Use of Derogatory Language:</u> Defendant Management's employee called Plaintiff a "faggot."

     d. <u>Failure to Address Racially Derogatory Remarks:</u> Defendant Management neglected to timely remove racially derogatory epithets from Plaintiff's apartment wall, even after being notified of its presence.

     e. <u>Discriminatory Demands:</u> Defendant Management unjustly demanded that Plaintiff remove a pro-LGBT sign and camera from his unit door while permitting others to have similar signage and cameras.

     f. <u>Disclosure of Private Health Information:</u> Employees of Defendant Management disclosed Plaintiff's private health status to other tenants in the building, violating his confidentiality and privacy rights.

     g. <u>Neglecting Legal Repair Obligations:</u> Defendant Management failed to conduct required inspections and repairs as required by the law.

     h. <u>False Police Reports:</u> Defendant Management filed multiple false police reports, inaccurately portraying him as a nuisance.

84. Defendant Owner's and Defendant Management's actions and omissions were intended to cause Plaintiff, a lawful occupant of the dwelling unit to vacate such unit or to surrender or waive any rights in relation to his occupancy.

## **<u>DEMAND FOR JURY TRIAL</u>**

85. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that the Court enter an order that:

a. Declares that the acts, policies, and practices of Defendants Owner, Management, and Kelsey Garcia complained of herein violate Plaintiff's rights under FHA, as amended, 42 U.S.C. § 3601 et seq.; New York Executive Law, N.Y. Exec. 296 § 5(a); the New York Real Property Law, N.Y. Real Prop § 227-d; New York City Municipal Law, N.Y. Code § 8-107(5)(1)(b) and New York City Administrative Code, N.Y. Admin. Code § 27-2005(d);

b. Declares that Defendant owner engaged in Unlawful Landlord Retaliation and Unlawful Eviction, as complained of herein, in violation of Plaintiff's rights under N.Y. Real Prop 223-b and N.Y. Admin. Code § 26-521;

c. Awards compensatory damages equal to the amount determined by jury as necessary to provide full compensation to Plaintiff for his injuries suffered as a result of Defendants' discriminatory and harmful conduct alleged herein, including the unlawful eviction as provided for under FHA 42 § U.S.C. 3613(c)(1); N.Y. Exec. Law § 297; N.Y. Code § 8-107; N.Y. Real Property Law 227-d and N.Y. Admin. Code §§ 27-2115(o), 26-523;

d. Awards punitive damages equal to the amount determined by jury as necessary to provide full compensation to Plaintiff for his injuries suffered as a result of Defendants' discriminatory, harmful, and retaliatory conduct alleged herein as

provided for under FHA 42 § U.S.C. 3613(c)(1); N.Y. Exec. Law § 297; N.Y. Code § 8-107 and N.Y. Real Prop §§ 227-d, 223-b;

e.  Enjoins Landlord-Respondents from engaging in harassment and imposes upon Landlord-Respondents the civil penalties for harassment. N.Y. Admin. Code §§ 27-2005(d), 27-2115(m)(2);

f.  Awards attorneys' fees, costs, expenses, and interest incurred in prosecuting this action pursuant to FHA 42 U.S.C. § 3613(c)(2), N.Y. Exec. Law § 297(10), and N.Y. Admin. Code § 27-2115(m)(4); and

g.  Awards such other relief as this Court deems appropriate.

Dated: October 9, 2025                    Respectfully submitted,

Norrinda Brown Hayat
Lincoln Square Legal Services, Inc.
150 West 62nd Street, 9th Floor
New York, New York 10023
Tel. (212) 636-6934
Email: nbrownhayat@lsls.fordham.edu

*Attorney for Plaintiff*