UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>605 WEST 42ND OWNER, LLC, COLUMBUS PROPERTY MANAGEMENT, LLC, and KELSEY GARCIA.<br><br>Defendants. | 1:25-CV-8362-LTS |

MEMORANDUM OPINION AND ORDER

Plaintiff Benjamin Rodriguez ("Plaintiff" or "Rodriguez") brings this action against Defendants 605 West 42nd Owner, LLC ("Owner"), Columbus Property Management, LLC ("Management," and together with Owner, "Corporate Defendants"), and Kelsey Garcia ("Garcia," and collectively, "Defendants"), asserting claims for discrimination on the basis of race, national origin, sex, disability, and source of income under several federal, state, and local law provisions, including the Fair Housing Act ("FHA"), the New York State Executive Law ("NYSEL"), and the New York City Code ("NYCC"). Plaintiff also asserts claims under the New York Real Property Law ("NYRPL") and the NYCC for discrimination based on domestic violence victim status. Plaintiff asserts further claims under the NYCC for landlord harassment, the NYRPL for landlord retaliation, and the New York City Administrative Code ("NYCAC") for illegal eviction. (See docket entry no. 1 ("Complaint" or "Compl.").) Plaintiff seeks compensatory and punitive damages, injunctive relief barring harassment, civil penalties under the NYCAC, attorneys' fees, and other relief. (Id. at 21-22.) The Court has jurisdiction of the federal claims asserted in this action pursuant to 28 U.S.C. section 1331 and 42 U.S.C.

section 3613(a)(1)(A), and supplemental jurisdiction of Plaintiff's state and local law claims pursuant to 28 U.S.C. section 1367.

Writing jointly, the Corporate Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted. (Docket entry no. 37 ("Corp. Defs. Mem.").) Garcia also moves to dismiss the claims against her under Federal Rule of Civil Procedure 12(b)(6). (Docket entry no. 24 ("Garcia Mem.").) The Court has reviewed the parties' submissions carefully. For the following reasons, Defendants' motions to dismiss the Complaint are granted.

## I. Background

The following facts, which are alleged in the Complaint or drawn from documents integral to it[1] and documents of which judicial notice may be taken,[2] are taken as true. Francis v. Kings Park Manor, Inc., 992 F.3d 67, 72 (2d Cir. 2021).

Plaintiff is an adult, gay, Latino male who is HIV-positive. (Compl. ¶ 11.) Owner is a limited liability corporation and the owner of 605 West 42nd Street, New York, NY 10032 (the "Subject Property"). (Id. ¶ 13.) Management is the management agent of the Subject

---

1 "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (quoting In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013)).

2 The Court "may (and often must) take judicial notice of the publicly available and relevant filings and orders in the prior litigation . . . to determine [res judicata]." Cameron v. Garland, No. 25-CV-6036-LJL, 2026 WL 1707077, at *4 (S.D.N.Y. June 12, 2026) (citation modified).

Property and, among other duties, handles tenant complaints, performs maintenance at the property, and enforces lease provisions. (Id. ¶ 15.)

On or about February 2021, Plaintiff moved into Apartment 18-M of the Subject Property. (Id. ¶ 17.) Several months later, a Management employee called Plaintiff a "f[***]ot." (Id. ¶ 18.) Plaintiff, "distraught," complained to the United States Department of Housing and Urban Development ("HUD"), which later referred the case to the New York State Division of Human Rights ("NYSDHR"). (Id. ¶¶ 18, 21.)

Around October 2021, Plaintiff informed Management of an Order of Protection ("Rxhea OOP") that had been filed against his ex-partner Gjon Rxhea. (Id. ¶ 19.) Management's employees, including the front door concierge, were aware of the Rxhea OOP. (Id.) Those employees, however, repeatedly failed to prevent Rxhea from entering, or permitted Rxhea to enter, the Subject Property and Plaintiff's floor. (Id.)

On December 20, 2021, the New York State Office of Temporary and Disability Assistance ("NYSOTDA") granted Plaintiff $24,000 in funds "in connection with the Emergency Rental Assistance Program ('ERAP')." (Id. ¶ 20.) Several months later, on July 14, 2022, Management refused Plaintiff's ERAP payment and "permitted rent arrears to accumulate." (Id. ¶ 28.) Plaintiff also receives a rental voucher issued by the New York City–run HIV/AIDS Services Administration ("HASA"), but he does not allege that Defendants refused that voucher. (Id. ¶ 11.)

In the period from June 2021 to January 2022, Management requested that Plaintiff remove his electronic doorbell. (Id. ¶ 22.) Plaintiff, suspecting differential application of the policy "for discriminatory reasons," inspected various floors of the Subject Property on February 11, 2022. (Id. ¶ 23.) Plaintiff noticed that other units still had wireless doorbells. (Id.)

Plaintiff captured "timestamped pictures" of the doorbells to prove this "differential treatment." (Id.) Plaintiff alleges no additional facts about the residents of these units, such as whether they were of a different race, sexuality, or disability status than Plaintiff.

Months later, in or about March 2022, Management informed Plaintiff that he "could not have signs on his door." (Id. ¶ 24.) Management then "removed a pro-LGBT rainbow sign from Plaintiff's front door." (Id.) Plaintiff later observed that other tenants of the Subject Property had religious and secular signs displayed on their doors. (Id. ¶ 25.)

That same month, Plaintiff found racist and homophobic graffiti on the wall next to his front door; the graffiti included the phrase "n[****]r f[***]ot." (Id. ¶ 26.) He also discovered graffiti on the staircase wall leading to his apartment reading "F[**]k Ben." (Id.) Plaintiff informed management and submitted multiple work orders, but Management did not paint over the graffiti for one month. (Id.)

On April 6, 2022, Plaintiff was called to the New York City Police Department's ("NYPD") Tenth Precinct, where he was arrested. (Id. ¶ 34.) Plaintiff alleges that the arrest was based on a false allegation that he had damaged Garcia's electronic doorbell while conducting his investigation of differential treatment. (Id.) Plaintiff had not met Garcia at the time and asserts that he "had no reason to destroy her camera." (Id.) Garcia filed an Order of Protection (the "Garcia OOP") against Plaintiff after the arrest. (Id.) On May 24, 2022, Plaintiff was issued a violation of the Garcia OOP for filming Garcia and hitting her door. (Id. ¶ 35.) Plaintiff alleges that he was outside of the Subject Property at the time of the alleged incident. (Id.) In or around December 2022, Plaintiff contacted the NYPD's Internal Affairs Division ("IAD"). He told IAD that he had not met Garcia and had not damaged her "camera." (Id. ¶ 36.) Plaintiff told the NYPD that Management had encouraged Garcia to fabricate "nuisance claims" to

remove him from the Subject Premises. (Id.) IAD told Plaintiff that Management had informed Garcia that Plaintiff had destroyed her doorbell and that Management had encouraged Garcia to complain "because 'they were trying to remove [him].'" (Id. (alteration in original).)

Additionally, in or around May 2022, the front door concierge "rejected Plaintiff's guests." (Id. ¶ 27.) Plaintiff alleges that Management employees had often tried to "instill fear in [Plaintiff's] guests" by warning them to be "cautious" of him because Plaintiff had just been "released from jail." (Id.)

In or around June or July of 2023, Plaintiff was in his apartment at the Subject Property and heard loud bangs. (Id. ¶ 44.) The NYPD Special Operations Unit, responding to a call from management reporting that Plaintiff "was suicidal," shot a projectile into the peephole and broke down Plaintiff's door. (Id.) Officers tased Plaintiff, threw him out of his apartment, and took him to the hospital. (Id.) Owner then changed the locks and removed Plaintiff's personal property. (Id. ¶ 45.) Plaintiff became homeless. (Id.) Plaintiff alleges that this lockout constituted an illegal eviction. (See id. ¶¶ 51-58.)

In September of 2023, Plaintiff filed a complaint pro se and in forma pauperis ("IFP") in this Court against Owner, Garcia, and other defendants, which was captioned Rodriguez v. Sky, 605 W 42 St Owner LLC, No. 23-CV-8034-LTS (the "2023 Federal Action" or "2023 Action"). Plaintiff asserted claims for, inter alia, wrongful eviction, false arrest, malicious prosecution, false police reports, and disclosure of medical information. Rodriguez v. Sky, 605 West 42 St Owner LLC, No. 23-CV-8034-LTS, 2023 WL 7305147, at *1, *3-4 (S.D.N.Y. Nov. 6, 2023). The Court, finding the complaint insufficient to state viable claims, granted Plaintiff leave to amend the pleading within sixty days. Rodriguez v. Sky, 605 W 42 St. Owner LLC, No. 23-CV-8034-LTS, 2023 WL 6542029, at *6 (S.D.N.Y. Sept. 12, 2023).

Plaintiff appealed this Court's order granting leave to amend; the appeal was dismissed. Rodriguez v. Sky, 605 W 42 St. Owner LLC, No. 23-CV-8034-LTS, 2024 WL 3429425, at *1 (S.D.N.Y. July 16, 2024). Plaintiff never filed an amended complaint in the 2023 Action, and the Court dismissed the case for failure to state a claim. Id. at *2.

On January 12, 2024, approximately six months after he was locked out by Owner, the New York State Supreme Court restored Plaintiff to his apartment. (Compl. ¶ 46.) Plaintiff found that many of his belongings were destroyed and that his father's ashes had been removed from their urn. (Id. ¶ 47.) There was also "damage to the apartment." (Id.) Plaintiff does not identify who destroyed his belongings or damaged the apartment, nor does he allege any specific motivations for the harms.

Months later, on November 30, 2024, Plaintiff tried to advocate for his neighbors, a "gay couple . . . facing similar unlawful behavior," with Management's front desk concierge. (Id. ¶ 29.) While Plaintiff was speaking, a person Plaintiff describes as "Garcia's husband" walked by the front desk. (Id.) "Garcia's husband" became aggressive towards Plaintiff and the couple. (Id.) "Garcia's husband," leaving, called Plaintiff a "pussy" and, noticing one of the neighbors recording, called the neighbor a "f[***]ot." (Id.) Management employees saw the interaction occur, "but did nothing to address [Garcia's husband's] behavior." (Id.)

Ten days later, on December 10, 2024, Plaintiff attempted to register his pet dog with Management as an emotional support animal. (Id. ¶ 30.) Management did not provide Plaintiff with the requested registration paperwork. (Id. ¶¶ 30-31.) Subsequently, Owner sent Plaintiff and his roommate a notice to cure, labeling Plaintiff's dog (apparently the support animal for which Management had refused to provide paperwork) a "nuisance" and claiming the

dog was of a "dangerous" breed and that it made Management's employees and tenants "nervous." (Id.)

Plaintiff generally alleges that all of the Corporate Defendants' foregoing actions were motivated by animus against him based on his protected characteristics, namely race, sexual orientation, disability status, and domestic violence victim status. (Id. ¶¶ 51-53, 57, 62.) Plaintiff also makes other undated allegations against the Corporate Defendants, such as alleging that Management "filed multiple false police reports" and "disclosed Plaintiff's private health status to other tenants," proffering no further facts about the incidents. (Id. ¶ 83(h), (f).)

Plaintiff alleges that Garcia manufactured the claim that Plaintiff damaged her doorbell, and "facilitated . . . Management's discriminatory conduct through her role as a[n] NYPD officer." (Id. ¶ 6.) Allegedly, Garcia encouraged Management to involve the police. (Id.) Plaintiff also asserts, without further elaboration, that "Defendant Garcia has played a pivotal role in discriminating against Plaintiff and has served as an agent of Defendant Owner." (Id. ¶ 49.) Plaintiff further asserts that "Owner encouraged, colluded with, and/or allowed . . . Garcia to manufacture . . . false nuisance claims," providing no additional facts to elucidate the accusation. (Id.)

Plaintiff filed the instant complaint on October 9, 2025. (Compl.)

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. The Court does not accept legal conclusions as true. Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Nor does it presume truthful "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (citation modified).

On the face of the Complaint, Plaintiff alleges only four actions by Defendants that implicate Plaintiff's protected characteristics: a Management employee calling Plaintiff a "f[***]ot" (Compl. ¶ 18); Management removing Plaintiff's pro-LGBT sign while other residents had been permitted to post religious and secular signs (id. ¶¶ 24-25); Management not timely removing the racist, explicit, and homophobic graffiti outside Plaintiff's apartment (id. ¶ 26); and the use of slurs by a person described as "Garcia's husband," who is not alleged to be an agent of the Corporate Defendants (id. ¶ 29). None of Plaintiff's other allegations concerning actions by the Corporate Defendants include specific facts suggesting animus towards Plaintiff's protected characteristics.

A. FHA Claims Against Corporate Defendants

Plaintiff asserts several claims under 42 U.S.C. sections 3604 and 3617 against the Corporate Defendants, alleging eviction and harassment, refusal of ERAP funds, discrimination in the terms and privileges of a dwelling, denial of a reasonable accommodation, and intimidation and coercion. (Id. ¶¶ 51-58.)

1. Res Judicata

The Corporate Defendants argue that, in light of the dismissal of the 2023 Action, the doctrine of res judicata bars Plaintiff's claims concerning "the doorbell camera, the alleged slurs in 2021, and the 'harassment' by management." (Corp. Defs. Mem. at 9.) Plaintiff does not dispute that the instant action arises from the same core facts to this extent, instead arguing that the 2023 Action was not an adjudication on the merits and that events that occurred after the

2023 Action was filed are not barred by res judicata. (See docket entry no. 47 ("Pl. Opp. to Corp. Defs. Mot. to Dismiss") at 3-6.)

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that [prior] action." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) (citation modified). To establish this affirmative defense, the Corporate Defendants "must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Id. (citation modified).

The 2023 Action was adjudicated on the merits. Because the question of whether a complaint states a claim on which relief may be granted is one of law, see, e.g., De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69 (2d Cir. 1996), a dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects, see, e.g., Brodsky v. N.Y.C. Campaign Fin. Bd. by Weisman, 796 F. App'x 1, 4 (2d Cir. 2019) (discussing dismissal pursuant to Rule 12(b)(6)); Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 205-06 (2d Cir. 2002) (discussing dismissal pursuant to 28 U.S.C. section 1915). Here, the 2023 Action was dismissed pursuant to section 1915(e)(2)(B)(ii) (i.e., for failure to state a claim on which relief may be granted). This dismissal constitutes an adjudication on the merits. See Cieszkowska, 295 F.3d at 205-06 (affirming dismissal on the ground of res judicata where the plaintiff's prior complaint, arising out of the same events albeit raising a different legal theory, had been dismissed pursuant to section 1915(e)(2)(B)(ii) for failure to state a claim). Plaintiff mistakenly cites to outdated precedent for the proposition that a dismissal under 28 U.S.C. section 1915(e)(2)(B)(ii) is not an adjudication on the merits when a pro se plaintiff proceeds IFP. (See Pl. Opp. to Corp. Defs.

Mot. to Dismiss at 8 (citing Denton v. Hernandez, 504 U.S. 25, 34 (1992).) Denton involved dismissal under a different provision of section 1915, solely concerning frivolousness, that has since been revised in the statute's 1996 amendment. Compare Denton, 504 U.S. at 34 (noting that a frivolousness determination under the predecessor provision of § 1915(e) "is not a dismissal on the merits"), with Berrios v. N.Y.C. Hous. Auth., 564 F.3d 130, 135 (2d Cir. 2009) (holding that a dismissal "pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim" has res judicata effect).

Additionally, there is identity or at least substantial privity of parties on both sides of the caption. Plaintiff filed both actions. See Cameron, 2026 WL 1707077, at *4 (finding res judicata for the same reason). While Owner and Garcia were named as defendants in the 2023 Action, Management was not explicitly named, however. See Rodriguez, 2023 WL 7305147, at *1 (not discussing Columbus Property Management, LLC). While res judicata generally requires that a case "involv[e] the same parties or their privies," Cameron v. Church, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (citation modified), holding the parties to a strict identity-of-parties requirement is inappropriate here. The parties do not themselves indicate or dispute any difference in defendants (Corp. Defs. Mem. at 9; docket entry no. 49 ("Corp. Defs. Reply") at 2-3; Pl. Opp. to Corp. Defs. Mot to Dismiss at 1), and many of the allegations in the 2023 Action are substantially identical to those in the instant case with respect to claims of harassment and discrimination by building staff, who appear to be Management employees. Furthermore, the identity of the plaintiff, not complete overlap of defendants, is typically the focus of a privity analysis for res judicata purposes. See, e.g., TechnoMarine SA, 758 F.3d at 499 (focusing on whether action involved "plaintiffs or those in privity with them"); Off. Publ'ns, Inc. v. Kable News Co., 811 F. Supp. 143, 147 (S.D.N.Y. 1993) ("Where the 'new' defendants are sufficiently

related to one or more of the defendants in the previous action which arises from the same transaction[,] all defendants may invoke res judicata.").

Lastly, any FHA claims alleged in this case that arise solely from events that occurred before the 2023 Action was filed in September 2023 "were, or could have been, raised in the prior action." TechnoMarine SA, 758 F.3d at 499. Whether claims could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (citation modified). The Court must determine whether the facts underlying the two actions "are [(1)] related in time, space, origin, or motivation . . . [(2)] form a convenient trial unit, and . . . [(3)] their treatment as a unit conforms to the parties' expectations or business understanding or usage." TechnoMarine SA, 758 F.3d at 499 (citation modified). All three elements are satisfied here.[3]

The claims in the instant action arise from the same alleged circumstances: allegations that Plaintiff's landlord and building staff harassed him to remove him from his apartment, colluding with Defendant Garcia to do so. See Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 112 (2d Cir. 2000) (noting that previous and instant claims arose from the same

[3] The fact that the 2023 Action was construed by this Court as a putative action under 42 U.S.C. section 1983 and that the instant case involves FHA claims does not preclude application of res judicata. See In re Teltronics Servs., Inc., 762 F.2d 185, 193 (2d Cir. 1985) ("New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata"); Lee v. Delta Air Lines, Inc., No. 22-CV-8618-GHW-RWL, 2023 WL 3592153, at *8 (S.D.N.Y. Apr. 26, 2023) ("That Lee now asserts different causes of actions is irrelevant; '[e]ven claims based on different legal theories are barred provided they arise from the same transaction of occurrence.'" (alterations in original) (citation omitted)).

"spring" of religious entanglement and finding res judicata). In both complaints, Plaintiff alleges disparate treatment in the removal of his doorbell and sign (compare Compl. ¶¶ 22-25, with 1:23-CV-08034-LTS, docket entry no. 1 ("2023 Complaint" or "2023 Compl.") at 54-55), alleges that he was arrested based on a false accusation by Garcia (compare Compl. ¶ 34, with 2023 Compl. at 5, 10, 22, 54), alleges that his ERAP funds were refused (compare Compl. ¶ 28, with 2023 Compl. at 5) and appears to complain about the same alleged NYPD mistreatment (compare Compl. ¶¶ 34, 44-45, with 2023 Compl. at 5-6). Both actions center on a wrongful eviction taking place in or around July 2023, after the NYPD performed a wellness check. (Compare Compl. ¶ 45, with 2023 Compl. at 5.)[4] Even Plaintiff's more general and undated allegations here are substantially identical to those raised in the 2023 Action. For example, Plaintiff generally asserts in the 2025 Complaint that Management employees disclosed personal information, just as he complained about his landlord "disclos[ing] personal records and[] discuss[ing] medical i[n]formation" in the 2023 Complaint. (Compare Compl. ¶ 83(f), with 2023 Compl. at 5.) The inclusion of some additional facts — e.g., Management employees warning guests to be "cautious" as Plaintiff had just been "released from jail" in May 2022 (compare Compl. ¶ 27, with 2023 Compl. at 5-6) — does not bar the application of res judicata, particularly where those additional facts involve the same kind of conduct. See Jiang v. Am. Express Nat'l Bank, No. 22-CV-2272-AMD-TAM, 2023 WL 144127, at *9 (E.D.N.Y. Jan. 10,

---

4 Based on the allegations in the two complaints, it appears that the 2023 eviction took place before September 11, 2023 (i.e., the filing date of the 2023 Action). Plaintiff states in the 2025 Complaint that, after the lockout, he was homeless for five months before his return to his apartment. (Compl. ¶¶ 44-46.) Because Plaintiff alleges that he was restored to his apartment on January 12, 2024 (id. ¶ 46), his eviction must have occurred before September 11, 2023. Therefore, the Court concludes that the "eviction" discussed in the 2023 Complaint is likely the same eviction discussed in the 2025 Complaint.

2023) (barring new claims on res judicata grounds because plaintiff could have raised the new facts in the previous action). The gravamen of both complaints is the same: Plaintiff's mistreatment at the hands of his landlord and building staff, who allegedly engaged in harassment and made false claims of wrongdoing to remove him from the Subject Property.

Because the "factual predicate" of the cases is identical, and because both actions involve a "common nucleus of operative facts," res judicata bars Plaintiff's FHA claims that are based on pre–September 2023 events. See Cameron, 253 F. Supp. 2d at 618, 620-22 (applying res judicata where core acts such as harassment, denial of tuition reimbursement, and promotion denial overlapped, despite evidence of racially discriminatory intent being required for the new action but not for the prior one); Vavani v. 146 W 29th St. Owners Corp., No. 24-CV-196-JGK, 2025 WL 416111, at *5 (S.D.N.Y. Feb. 5, 2025) (noting that actions involved a common nucleus of operative facts: the plaintiff's "claim that the defendants conspired to prevent him from joining Local 32BJ and thereby obtaining certain benefits"). Although Plaintiff adds new legal theories, "[t]he fact that a different set of rights is at issue does not take a claim outside the purview of res judicata when the violation of both sets of rights accrue from the same factual predicate." See Magi XXI, Inc. v. Stato Della Cità Del Vaticano, 22 F. Supp. 3d 195, 202 (E.D.N.Y. 2014) (emphasis omitted). And while the instant complaint does allege conduct that occurred after the 2023 Action was filed, most of the actions described are "merely additional examples of the earlier-complained of conduct, such that the action remains based principally upon the shared common nucleus of operative facts." Cameron, 253 F. Supp. 2d at 620 (citation modified). Plaintiff cannot "use the mere inclusion of a few post-[2023 Action] acts . . . to resurrect a claim, grounded almost entirely upon . . . events preceding the prior litigation." TechnoMarine SA, 758 F.3d at 502 (citation modified).

For the above reasons, the Court finds that Plaintiff's FHA claims are barred by res judicata to the extent that they arise from the same factual predicates as the 2023 Action.

2. Statute of Limitations

Even if the claims discussed above are not barred by res judicata, the standalone claims arising Management's refusal of ERAP funds, a Management employee's use of slurs, and Management's handling of the racist and homophobic graffiti (Compl. ¶¶ 51-52, 55) are nonetheless barred because they rest on events that occurred outside of the FHA's two-year limitations period. See 42 U.S.C.A. § 3613(a)(1)(A) (Westlaw through P.L. 119-102) (allowing a plaintiff to bring suit "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice"). Accordingly, Plaintiff's causes of action based solely on events occurring before August 28, 2022,[5] are untimely unless he can plead plausibly that they are part of a continuing violation.

---

5 Plaintiff argues that his "administrative complaint with the SDHR tolled his statutory period for approximately one year and nine months." (Docket entry no. 47 at 15.) While the limitations period of an FHA claim is tolled during the pendency of an administrative proceeding before HUD, Boykin v. KeyCorp, 521 F.3d 202, 211 (2d Cir. 2008), the pendency of a state administrative proceeding before the SDHR would only do the same upon a formal referral by HUD. See 42 U.S.C. § 3613(a)(1)(B); § 3610(f).

Plaintiff initiated his HUD complaint in August 2021 and alleges that HUD referred the case to the SDHR on January 26, 2022. (Compl. at 5.) The SDHR dismissed Plaintiff's case for lack of probable cause on September 13, 2022. (Id.) While Plaintiff does not provide a precise date on which he initiated his HUD complaint, assuming he did so on the earliest possible date of August 1, 2021, then the statute of limitations was tolled for 408 days, not the one year and nine months Plaintiff claimed in his submission.

As such, at earliest, the statute of limitations began to run 1,138 days before the Complaint was filed on October 9, 2025: on August 28, 2022. If there was no formal referral to SDHR, then the operative date is instead October 9, 2023. See Wilshire v. L&M Dev. Partners, No. 20-CV-7998-JPO, 2022 WL 847067, at *3-4 (S.D.N.Y. Mar. 22, 2022) (tolling the FHA's two-year statute of limitations only from when HUD accepted plaintiff's complaint to when it issued its final determination even though, as

Plaintiff has not done so, and the continuing violation doctrine cannot revive these pre-limitations claims. While Plaintiff does not directly invoke the continuing violation doctrine (see generally Compl.; see Pl. Opp. to Corp. Defs. Mot. to Dismiss at 1), the Corporate Defendants construe Plaintiff's arguments as invoking the doctrine (Defs. Mem. at 11; Defs. Reply at 6), as does the Court. See Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., No. 00-CV-6307-KMK, 2007 WL 259937, at *7 (S.D.N.Y. Jan. 29, 2007) ("[A] claim . . . based on a continuous pattern or practice of discrimination . . . . is known as the 'continuing violation' doctrine." (citation modified)).

The continuing violation doctrine "provides an 'exception to the normal knew-or-should-have-known accrual date,'"[6] Lucente v. County of Suffolk, 980 F.3d 284, 309 (2d Cir. 2020) (citation modified), allowing a plaintiff to revive time-barred acts. Under the doctrine, the limitations clock instead starts "when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'" Lucente, 980 F.3d at 309 (citation modified); see Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982) (applying the continuing violation doctrine to FHA claims). The doctrine does not apply here, because Plaintiff fails to allege facts showing that the Corporate Defendants engaged in discriminatory conduct that was "comprised of a series

---

here, the SDHR conducted a parallel investigation on a different timeline). Regardless of the operative date, the specific animus-motivated events complained about and discussed here occurred on or before July 2022. (See Compl.)

[6] Under the FHA, claims accrue when Plaintiff knew or should have known about his injuries. See Saint-Jean v. Emigrant Mortg. Co., 129 F.4th 124, 140 (2d Cir. 2025) (holding that the federal injury discovery rule is applicable to FHA actions); Newkirk v. Douglas Elliman, Inc., No. 23-CV-7040-VM, 2024 WL 5089160, at *4 (S.D.N.Y. Dec. 12, 2024) (noting that under the federal injury discovery rule, claims accrue "when . . . plaintiff knows or has reason to know of the injury which is the basis of his action" (emphasis omitted) (citation omitted)).

of separate acts that collectively constitute one 'unlawful . . . practice.'" Elmenayer v. ABF Freight Sys., 318 F.3d 130, 134 (2d Cir. 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).

To make out a continuing violation, "[P]laintiff must allege . . . the existence of an ongoing policy of discrimination." Lucente, 980 F.3d at 309. While Plaintiff does allege, in broad strokes, that Defendants' "policies" were discriminatory (Compl. ¶ 7; id. at 21) and that they engaged in a "pattern" of conduct (id. ¶ 53), he "fail[s] to allege facts (as opposed to conclusory legal claims) establishing that . . . Defendant[s] had a specific discriminatory policy." Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (emphasis omitted). For instance, Plaintiff merely proffers, but does not elaborate upon, an assertion that his gay neighbors faced "similar unlawful behavior." (Compl. ¶ 29.) The four specific instances of discriminatory conduct Plaintiff does allege, see supra at 8, are too sporadic to adequate to support an inference of a discriminatory policy. See Favourite v. 55 Halley St., Inc., 381 F. Supp. 3d 266, 272-74, 279 (S.D.N.Y. 2019) (not finding discriminatory policy where "intermittent" incidents occurred in the building elevator, including the physical cornering of plaintiff after continuous complaints about plaintiff).

The alleged continuing violation would have to consist of non-discrete, pre–limitations deadline acts. See Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 157 (2d Cir. 2012); Liboy v. Russ, No. 22-CV-10334-VM, 2023 WL 6386889, at *8 (S.D.N.Y. Sept. 29, 2023) (applying same rule in FHA context). A discrete act is a "separate actionable practice," Morgan, 536 U.S. at 114 (citation modified), "wholly separable" from other acts and "discrete in its nature," Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004). Plaintiff's 2023 eviction is discrete because it is separately actionable. See Walker v. Mirbourne NPN 2

LLC, No. 22-CV-2382-RPK-VMS, 2023 WL 11867001, at *14 (E.D.N.Y. Feb. 27, 2023) (holding that eviction was a discrete act). So too is the Corporate Defendants' alleged denial of a reasonable accommodation claim. See Higgins v. 120 Riverside Boulevard at Trump Place Condo., No. 21-CV-4203-LJL, 2022 WL 3920044, at *14-15 (S.D.N.Y. Aug. 31, 2022) (holding that a reasonable accommodation request was a discrete act even where plaintiff alleged a policy and practice and made repeated requests). For the above reasons, the Court finds that the continuing violation doctrine is inapplicable and, because the untimeliness is apparent on the face of the complaint, dismisses all claims which arose prior to August 28, 2022.

3. Failure to State as Claim

Plaintiff's allegations regarding the remaining timely acts — namely, denial of Plaintiff's request for documentation to register an emotional support animal, his alleged eviction, and other claims arising from the Corporate Defendants' actions — fail to state a claim upon which relief may be granted under the FHA. Even considering all of the facts alleged, not just the timely ones, Plaintiff also fails to state a viable "hostile housing environment" claim.

a. Plaintiff Fails to State a Reasonable Accommodation Claim.

To state a denial of reasonable accommodation claim under 42 U.S.C. section 3604(f)(3)(B) (Compl. ¶ 54), Plaintiff must plead facts supporting inferences that "(1) [he] is disabled within the meaning of the FHA, (2) the defendant[s] knew or should have known of this fact, (3) an accommodation may be necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) such accommodation is reasonable; and (5) the defendant[s] refused to make the requested accommodation." Martinez ex rel. Martinez v. Lexington Gardens Assocs., 336 F. Supp. 3d 270, 277 (S.D.N.Y. 2018) (citation modified). Plaintiff need not plead discriminatory animus to prevail on this claim. Austin v. Town of Farmington, 826 F.3d 622,

627 (2d Cir. 2016). Here, the first and fifth elements are satisfied, as Plaintiff has pleaded that he is disabled because of his HIV and that his request for permission to house an emotional support animal was not granted.

Plaintiff fails, however, to plead the other elements. Beyond conclusory statements, the only specific fact suggesting that the Corporate Defendants were aware of his HIV-related disability, let alone understood that his request for an emotional support animal was related to that disability, is the fact that Plaintiff receives a rental subsidy voucher from HASA. (See Compl. ¶¶ 11-12, 30, 54.) Similarly, Plaintiff fails to plead that his dog may be necessary to alleviate his disabling condition or that his dog enabled him to equally use and enjoy his apartment. See 42 U.S.C. § 3604(f)(3)(B) (defining discrimination as including "refusal to make reasonable accommodations . . . when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling"); Tuman v. VL GEM LLC, No. 15-CV-7801-NSR, 2017 WL 781486, at *6 (S.D.N.Y. Feb. 27, 2017) (holding that plaintiff established plausible necessity for an emotional support dog where plaintiff provided a letter from her doctor describing alleviation of post-traumatic stress disorder by the dog, and thus a factfinder could infer that she may have needed the dog to equally enjoy her apartment).

Because Plaintiff offers no specific facts suggesting that his request to register an emotional support animal contained sufficient information to place a defendant on notice that the request was one for a reasonable accommodation of a disability, he fails to state a claim under section 3604(f)(3)(B). See Higgins v. 120 Riverside Boulevard at Trump Place Condo., No. 21-CV-4203-LJL, 2021 WL 5450205, at *6, *8 (S.D.N.Y. Nov. 19, 2021) (dismissing complaint because plaintiff "failed to plead facts showing that she gave such an explanation or otherwise indicated that she was requesting an accommodation, she has not adequately pleaded an essential

element of her failure-to-accommodate claim"); cf. Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 339 (E.D.N.Y. 2012) (finding that awareness within the meaning of section 3604(f)(3)(B) existed where plaintiffs explicitly informed hearing officer of disability existence in addition to alleging that the tenant received Social Security and Social Security Disability income).

b. Plaintiff Fails to Plead Animus for Claims Arising from the Remaining Timely Events

Plaintiff's remaining claims under 42 U.S.C. sections 3604 and 3617 (Compl. ¶¶ 53, 56) must be based on timely facts supporting a "minimal inference of discriminatory motivation." Palmer v. Fannie Mae, 755 F. App'x 43, 45-46 (2d Cir. 2018). In other words, Plaintiff must plead facts showing that animus was a "motivating factor" (not necessarily the only factor) behind Corporate Defendants' within-limitations acts, which include his 2023 eviction, banning Plaintiff from a different apartment building and declining to intervene in his verbal altercation with "Garcia's husband." Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 616 (2d Cir. 2016). Because Plaintiff merely recites statutory language and makes conclusory allegations as to animus (see, e.g., Compl. ¶¶ 48, 51-52), none of these events are individually actionable under the FHA. See Twombly, 550 U.S. at 555.

The verbal altercation with "Garcia's husband" (Compl. ¶ 29) is the only within-limitations act that includes specific factual allegations supporting the existence of animus. Those remarks alone, however, are insufficient to state an FHA claim against the Corporate Defendants. See Williams v. Calderoni, No. 11-CV-3020-CM, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("The naked assertion by plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss." (citation modified)), aff'd sub nom.,

Williams v. Schwartz, 529 F. App'x 89 (2d Cir. 2013). Additionally, "Garcia's husband" is not alleged to have been acting for or at the behest of any defendant, so his invective may not even rise to the level of a stray remark. See Harper v. Vill. of Hillburn, No. 25-CV-342-KMK, 2025 WL 2653673, at *12 (S.D.N.Y. Sept. 16, 2025) ("[S]tray remarks are insufficient to plausibly allege an intent by defendants to discriminate." (citation modified)). Plaintiff has "failed to provide 'other indicia of discrimination'" suggesting those "stray remarks bear 'a more ominous significance.'" See Favourite, 381 F. Supp. 3d at 281 (holding that non-decisionmakers calling plaintiff "big, black and scary" was not enough to find discrimination because those remarks were "too remote and oblique" with respect to the other actions (citation modified)).

Plaintiff similarly fails to plead specific facts alleging that Corporate Defendants' troubling failure to remove racist and homophobic graffiti (Compl. ¶¶ 26, 55) was motivated by animus, let alone that the within-limitations actions, e.g., the changing of Plaintiff's locks after he was removed from the unit by NYPD (id. ¶ 44-45), the destruction of Plaintiff's property by an unspecified actor (id. ¶ 47), Plaintiff's brief lockout in the cold (id. ¶ 32), or his ban from Oskar Luxury Apartments (id. ¶ 33), were driven by discriminatory intent. Nothing in the Complaint alleges that the Corporate Defendants performed any actions "because of [Plaintiff's] race, sexual orientation, and disability status." (Id. ¶¶ 51-52 (emphasis added)); Tellock v. Davis, No. 02-CV-4311-FB, 2002 WL 31433589, at *6 (S.D.N.Y. Oct. 31, 2002) ("[A]lthough [plaintiff] alleges that [defendant] used 'racially charged' language, he fails to establish that there was any causal connection between this language and defendants' attempt to evict him."), aff'd, 84 F. App'x 109 (2d Cir. 2003).

Even when these actions are considered in context with the untimely acts, animus is not adequately pleaded in the Complaint. Plaintiff does not plead facts plausibly supporting an

inference of discriminatory motivation on the part of the Management company or the Owner. Francis, 992 F.3d at 74 (citation modified). Consequently, Plaintiff fails to state a timely claim in paragraphs 51-53 and 55-57 of the Complaint.

c. Plaintiff Fails to Plead the Existence of a Hostile Housing Environment.

Finally, Plaintiff alleges that the Corporate Defendants engaged in a "pattern" or "practice" of discrimination against Plaintiff. (Compl. ¶¶ 3, 7, 53, 56; Pl. Mem. at 11.) The Court construes this allegation as an attempt to plead that the Corporate Defendants created a hostile housing environment for Plaintiff and, in doing so, considers both timely and untimely acts. See Favourite, 381 F. Supp. 3d at 277 ("Courts in this Circuit have construed [s]ection 3604(b) . . . to prohibit the creation of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment." (citation modified)).

A plaintiff making a hostile housing environment claim must establish that "(1) [he] was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) a basis exists for imputing the allegedly harassing conduct to the defendants," as well as "a relationship between the discriminatory conduct and housing." Cain v. Rambert, No. 13-CV-5807-MKB, 2014 WL 2440596, at *5 (E.D.N.Y. May 30, 2014) (internal quotation marks and citations omitted). "For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and . . . not merely isolated or sporadic." Favourite, 381 F. Supp. 3d at 278. Under Title VII, courts applying this standard have considered "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance." Littlejohn v. City of New York, 795 F.3d 297, 321 (2d Cir. 2015) (citation modified).[7]

Plaintiff plainly fails to allege facts supporting the existence of such a severe or pervasive environment. While Plaintiff recounts a single stray remark by a Management employee (see Compl. ¶ 18 (alleging that employee called Plaintiff a "f[***]ot")), he complains of no other specific instances which would suggest that the Corporate Defendants acted with discriminatory intent. The only other events with protected-characteristic-specific overtones that are clearly attributed to the Corporate Defendants are the removal of the LGBT sign and the failure to remove the hostile hallway graffiti immediately. Even taken together, these events are not sufficiently severe or pervasive to support an inference of a hostile housing environment arising from animus toward protected characteristics. See Ponce v. 480 E. 21st St., LLC, No. 12-CV-4828-ILG-JMA, 2013 WL 4543622, at *1-2 (E.D.N.Y. Aug. 28, 2013) (holding that conclusory assertions of a hostile environment and one specified act of sexual harassment by a building superintendent were insufficient to support a hostile housing environment claim). Consequently, paragraph 53 of the Complaint, to the extent it can be read to plead the existence of a hostile housing environment, fails to state a claim upon which relief may be granted.

For the foregoing reasons, all of Plaintiff's FHA claims against the Corporate Defendants are dismissed.

---

[7] When evaluating a hostile housing environment claim, the Second Circuit has applied both the FHA and Title VII standards, considering whether harassment was both (i) "pervasive and severe" and (ii) "pervasive or severe." See A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo., No. 19-2771-CV, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (articulating and applying both standards). Here, the Court has similarly considered both whether the alleged conduct was sufficiently severe and pervasive and whether it was sufficiently severe or pervasive and concludes that the Complaint meets neither threshold.

B. Claims Against Garcia

Plaintiff pleads one cause of action against Garcia, under sections 26-521(a)(1), (2), and (3) of the NYCAC. (Compl. ¶ 76.) The plain language of section 26-524, however, provides that "[a]ll such actions or proceedings [under the relevant Administrative Code chapter] shall be brought in the name of the city by the corporation counsel." N.Y.C. Admin. Code § 26-524. The statute provides for no private right of action and, thus, Count 7 of the Complaint, which pleads this sole claim against Garcia, must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff asserts in his Opposition that he has also pleaded an FHA claim against Garcia. (Docket entry no. 44 ("Pl. Opp. to Garcia Mot. to Dismiss") at 3.) No such claim is, however, pleaded in the Complaint itself, and Plaintiff cannot amend his Complaint through an assertion in a memorandum of law. Soules v. Connecticut, 882 F.3d 52, 56 (2d Cir. 2018) ("Ordinarily, parties may not amend the pleadings through motion papers.").

C. Supplemental Jurisdiction.

Federal district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [the] court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]hen the federal law claims have dropped out of the lawsuit . . . and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citation modified), superseded by statute, 28 U.S.C. § 1367, as recognized in Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 41 (2025). The Court has dismissed all of Plaintiff's federal claims. The Court therefore declines to exercise supplemental jurisdiction over the remaining state and local law claims and, because the parties are not diverse, dismisses those claims for lack of subject matter jurisdiction.

D. Plaintiff May Move for Leave to Amend

The Court has dismissed Plaintiff's federal causes of action against the Corporate Defendants and has granted the Corporate Defendants' motion to dismiss. The Court has also dismissed Plaintiff's sole claim against Garcia and granted Garcia's motion to dismiss. In the Second Circuit, courts typically grant leave to replead upon granting a motion to dismiss. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). Leave should be given freely "when justice so requires." Fed. R. Civ. P. 15(a). If there are "'at least colorable grounds for relief,' justice requires granting leave to amend." Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp., No. 14-CV-3876-LTS, 2017 WL 395206, at *1 (S.D.N.Y. Jan. 27, 2017) (citation modified), aff'd, 723 F. App'x 20 (2d Cir. 2018). The Court therefore gives Plaintiff leave to file a motion for leave to amend his claims against the Corporate Defendants and to plead an FHA claim against Garcia within 30 days. Plaintiff may, if he is able, include facts sufficient to support a finding of a continuing violation or that provide a basis for equitable tolling of otherwise untimely claims. The Court denies leave to amend as to the Administrative Code claims because Plaintiff lacks standing to sue under that statute and amendment would therefore be futile. See Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011).

## III. Conclusion

The motions to dismiss of the Corporate Defendants and Garcia are granted and the Complaint is dismissed in its entirety. Plaintiff may file a motion for leave to amend within **30 days** of the date of this order. If Plaintiff fails to file a timely motion, the case will be dismissed with prejudice as to the federal claims and without prejudice as to state and local law

claims and judgment will be entered without further advance notice. This order resolves docket entry nos. 24 and 37.

SO ORDERED.

Dated: New York, New York
September 9, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge